**UNITED STATES of America ex rel. Martin NISTLER, Petitioner,**

v.

**James CHRANS, Warden, Respondent.**

**No. 89 C 4437.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 15, 1989.

Edward M. Genson, Genson, Steinback & Gillespie, Chicago, Ill., for petitioner.

---

Terence Madsen, Asst. Atty. Gen., Crim. Appeals Div., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case presents a rare instance where a federal court may have to bridle the discretion granted to a state trial judge by the state itself—discretion which, in most cases, this court could not properly constrain. The record here reveals a state court decision which may be arbitrary, as the state has not presented any valid rationale for it.

According to the briefs and exhibits filed in this court—there is no formal state court record here—Martin Nistler is a 21-year-old man whom the State of Illinois holds at the Sheridan Correctional Center. Nistler awaits a decision on his appeal of his conviction of two counts of aggravated battery, which are Class 3 felonies under Illinois law. See Ill.Rev.Stat. ch. 38, ¶¶ 12–4(a), 12–4(b)(8) (1987). The Circuit Court of McLean County, Illinois, sentenced Nistler to two years imprisonment for his offenses on March 3, 1989. Prior to that time, the state had released Nistler on $500.00 bond, and Nistler had appeared at all required proceedings. Nevertheless, despite Nistler's motion to maintain the conditions of his release, the trial judge revoked the bond pending appeal. According to Nistler, the only reason the court gave for this decision had to do with the conduct Nistler displayed in committing the batteries.

Nistler moved before the Illinois Appellate Court to set bond or, alternatively, to order the trial court to hold a hearing. On March 27, 1989 the appellate court denied the motion without comment. Nistler moved for the same relief before the Illinois Supreme Court; on May 9, 1989, in a similarly terse decision, the Illinois Supreme Court denied Nistler's motion.

Nistler petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254 (1982). He asks this court either to set bail pending appeal or to remand this case to the Circuit Court of McLean County with directions that it conduct a hearing in conformity with state law. Were this court to grant Nistler the latter relief, Nistler would not get much for his effort. Unlike the decision whether to grant a person bail pending trial—which statutes guide, see Ill. Rev.Stat. ch. 38, ¶¶ 110–2, 110–5, 110–6—under Illinois law the decision whether to grant a person bond pending appeal is left entirely to the discretion of the trial court. See *id.* at ¶ 110–7(d); Ill.Sup.Ct.R. 609(b), Ill.Ann.Stat. ch. 110A, ¶ 609(b) (Smith–Hurd 1985); *People v. Vaseska,* 74 Ill. App.2d 297, 220 N.E.2d 248 (1966) (abstract opinion). Illinois law does not provide for a hearing on motions for bond pending appeal, although it recommends consideration of certain factors prior to decision. See Ill.Rev.Stat. ch. 38, ¶ 110–2. Even if Illinois law did mandate a hearing, this court could not order the state to conform to its own laws solely on the grounds that the state violated them. The federal courts may not issue writs of habeas corpus on the basis of an error of state law. See *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984).

The question thus is whether this court should release Nistler on bond pending his appeal. Nistler's desire for bond is understandable, and it goes beyond the average person's preference for freedom. Under Illinois law, persons who receive prison sentences but who demonstrate good conduct while in prison receive a day-for-day credit towards their sentence. See Ill.Ann. Stat. ch. 38, ¶ 1003–6–3(a) (Smith–Hurd 1985). Thus, were Nistler to behave himself—and there is nothing in the present (albeit sketchy) record to suggest that he will not—he will have served his entire sentence by sometime in March 1990. According to the state, Nistler's brief in support of his appeal was due in the Illinois Appellate Court on June 21, 1989; Nistler argues that it is likely that he will have served his entire sentence before all of the briefs are before the appellate court and that court renders a decision. Nistler would like to be free on bond so that he can receive something more than a moral victory if he prevails on appeal.

A federal court may not grant a writ of habeas corpus to a person in a state's custody unless the state is holding that person "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Nistler argues that his confinement is in violation of the Eighth Amendment, as applied to the states through the Fourteenth Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The decisions of the Seventh Circuit which have applied these constitutional provisions to state decisions whether to grant bond on appeal have suggested that these rights overlap. In *United States ex rel. Walker v. Twomey*, 484 F.2d 874 (7th Cir. 1973) (per curiam), the court noted first that the Eighth Amendment, as applied to the states through the Fourteenth Amendment, prohibits the states from requiring excessive bail. The court then held that "[w]hatever the content of the constitutional protection with respect to bail, ... it is clear that once a state has made provisions for bail pending appeal, the arbitrary denial of bail violates the fourteenth amendment." This language mirrored that used by Judge Will in one of the decisions which the *Walker* court was reviewing, *United States ex rel. Keating v. Bensinger*, 322 F.Supp. 784 (N.D.Ill.1971). There Judge Will relied on decisions construing the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. See *id.* at 786 & n. 6. Modifying Judge Will's approach, the *Walker* court held that the state violates the Fourteenth Amendment in denying bail to a prisoner awaiting appeal only when the prisoner demonstrates that the state lacked a rational basis for its decision. See *Walker*, 484 F.2d at 876.

The Seventh Circuit's cases since *Walker* have applied its single test to state decisions to deny bond to persons whose convictions are on appeal. See *United States ex rel. Smith v. Twomey*, 486 F.2d 736, 739 (7th Cir.1973) (per curiam); *United States ex rel. Sampson v. Brewer*, 593 F.2d 798, 799–800 (7th Cir.1979) (per curiam). At one time this test was the same as the one used by the Seventh Circuit in reviewing state decisions denying bond before trial; the

only difference was that before trial, the state bore the burden of proof in demonstrating a rational decision. See *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1133–34 (7th Cir.1984) (bond pending appeal of order dismissing charges); *U.S. ex rel. Garcia v. O'Grady*, 812 F.2d 347, 352–55 (7th Cir.1987) (denial of bond pending trial).

This court is not confident that a combined standard for testing either whether bail is excessive (the Eighth Amendment inquiry) or whether the state has denied bail arbitrarily (the due process/equal protection inquiries) remains appropriate. In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Court separated its analysis of the constitutionality of the federal government's pretrial detention statutes under the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment. While the Court declined to define the Eighth Amendment's limits on Congress's power to deny bail to criminal arrestees, see *id.* at 754, 107 S.Ct. at 2105, it is clear from the Court's treatment of the various constitutional issues that they are analytically distinct.

The Seventh Circuit may be prepared to discard its conflated analysis of attacks under the Eighth and Fourteenth Amendments upon state decisions to deny bail to persons awaiting appeal. In a post-*Salerno* challenge to an Illinois rule requiring temporary custody of parolees upon probable cause of a violation of parole, the Seventh Circuit weighed the appellants' Eighth Amendment, Due Process, and Equal Protection arguments separately. See *Faheem-El v. Klincar*, 841 F.2d 712 (7th Cir. 1988) (en banc). In discussing the constitutionality of the rule under the Eighth Amendment's Excessive Bail Clause, the court focused on the state's substantive power to enact its rule. In looking at the rule's constitutionality under the Fourteenth Amendment's Due Process Clause, the court examined whether the state's procedures provided minimum protections against wrongful deprivation of liberty. In examining the rule's constitutionality under

the Equal Protection Clause, it performed an entirely different analysis. See *id.* at 718-28.

*Salerno* and *Klincar* thus draw the uniform constitutional test announced in *Walker* into question. *Walker* probably no longer provides an all-purpose test for analyzing whether a state's denial of bail to a convict awaiting appeal is constitutional under the Excessive Bail Clause of the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. This court thus will address Nistler's attacks separately, beginning with his due process argument.

As *Walker* indicates, the Due Process Clause of the Fourteenth Amendment does not impose procedures on a state's decision whether to grant bail to a criminal convict pending appeal. It does require the state, however, to act consistently once it decides to grant bail to some of these persons. *Walker* noted the long-standing presumption that a state acts regularly in all of its decisions, whether oral or written, explained or unexplained. " 'This is not to say that the petitioner has lost his constitutional right or remedy. He can still attack the decision to deny him bail. He must, however, bear the burden of showing that the record provides no rational basis for the decision.' " *Walker*, 484 F.2d at 876, quoting *United States ex rel. Kane v. Bensinger*, 359 F.Supp. 181, 184 (N.D.Ill.1972).

■ As noted earlier, the lack of an official record handicaps the court in reviewing the state's decision here. In its brief presented to this court, the state suggests three basis for its decision: preventing Nistler from fleeing Illinois, upholding a presumption that persons sentenced to imprisonment should not be released unless they demonstrate a substantial possibility of reversing their conviction, and securing the public from Nistler's violent behavior.

The first of these grounds is not a rational one, on the undisputed facts presented to this court. The state had released Nistler on bond prior to his conviction, and Nistler appeared at all required proceedings. The presentence investigation report on Nistler states that he was employed in Niles, Illinois; he also is a life-long resident of the state, and formerly resided with his mother, to whom Nistler relates well. The state argues that despite these facts, once any trial judge sentences a person to prison, the risk of flight increases to the point that bail cannot guarantee future appearance. There is no support for this contention, however, in the record. The court would be suprised to learn that Illinois denies bail to all persons awaiting appeal who have received a sentence of a term of imprisonment. Unless the state did so, or unless there is something as yet not indicated to the court in the record which would support the state's particular concern that Nistler will flee, the state cannot claim risk of flight as a reason for its decision.

The court similarly finds that the second ground for denying bail is not rational on the record presented to the court. The state made only one argument to the Illinois Appellate and Supreme Courts respecting possible errors in the trial court: that Nistler's post-trial motion had no merit. The state made this argument based solely on a prosecutor's assessment of the motion and the trial court's denial of it— not on the basis of independent analysis. Like its professed concern for preventing Nistler from fleeing, this appears to be an after-the-fact justification for holding Nistler, one without support in the record.[1]

■ The state's third justification does have support in the record: protecting the public from harm. Nistler has been found guilty of two aggravated batteries committed on one occasion. While Nistler has no prior record, the violence of these felonies is manifest. Denying bond to persons appealing conviction of a violent felony is rational, even when there is no evidence of chronic violent behavior. See *Walker*, 484 F.2d at 876; *Smith*, 486 F.2d at 739; *Simpson v. Brewer*, 593 F.2d 798 at 799 (7th Cir.1979). The state's decision thus

---

1. Even if the state had argued substantively to the Illinois courts that Nistler did not have a substantial possibility of prevailing on appeal, the court would question whether this would be a rational basis for denying bond. The court cannot discern what interest denial would serve, other than deterring appeals.

did not transgress the Due Process Clause of the Fourteenth Amendment.

Nistler's Equal Protection argument is more formidable. As the Seventh Circuit has noted, the essence of the Constitution's guarantee of equal protection of the laws is "straightforward. It commands that states treat similarly situated people in a similar manner." *Klincar*, 841 F.2d at 727. Courts are to examine equal protection challenges in two steps:

First, a court must determine whether the state action infringes upon a fundamental right or discriminates on the basis of a suspect category. If so, the ... action is reviewed under either a strict or intermediate scrutiny standard. ... If no fundamental rights or suspect categories are involved, a court must simply determine whether the differential treatment of similarly situated individuals is rationally related to a legitimate state interest. A party alleging an equal protection challenge involving this standard bears the "heavy burden" of demonstrating that the differences in treatment are to unrelated to legitimate objectives that the only conclusion a court can reach is that the [state's] actions were irrational.

*Id.*, quoting *Peterson v. Lindner*, 765 F.2d 698, 705 (7th Cir.1985).

Nistler does not assert that he has a fundamental right to bond pending his appeal, or that the state denied him bond on the basis of a suspect classification. He thus bears the burden of demonstrating that the differences which the state asserts as a basis for its decision are "so unrelated to legitimate objectives" that the state's decision in his case was capricious.

As noted above, the only rational basis for denying Nistler bail was that he had committed a violent felony. The state presents no argument, and the record does not reveal, why it denied bond in this case, while apparently letting others go free. Il-

linois law allows release on recognizance or bond for violent felons who are awaiting appeal. See Ill.Rev.Stat. ch. 38, § 110–2. While it was within the trial court's power to deny release or bond, the record (or perhaps lack of record) indicates that the decision made here was arbitrary. The state has offered no proof that it denies bail to all persons who are in Nistler's position, which raises the inference that the state did so arbitrarily or for illegitimate reasons.[2] The state thus did not afford Nistler the equal protection of its laws.

Because of this court's conclusion that the state violated the Equal Protection Clause of the Fourteenth Amendment in denying bond to Nistler, the court will not rule on his contention that the state violated the Excessive Bail Clause of the Eighth Amendment. The court will give the state 30 days in which to hold a bond hearing. If it does not, this court will hold a hearing as to whether this court should grant bond pending Nistler's state criminal appeal, and if so, the amount of that bond.[3] The court orders the clerk of this court to set the matter for hearing.

---

2. The state could argue that in certain cases, the risk of flight and the threat to the public, coupled with a low probability of success on appeal, would place the prisoner in a special class of persons for whom denying bail would be appropriate. There is nothing in the present record, however, which demonstrates that Nistler would fall into such a category. The record does not support the contentions that persons sentenced to imprisonment flee regardless of their ties to the jurisdiction, or that Nistler had a low chance of prevailing on appeal.

3. If the parties wish to supplement the record before or at this hearing, they may do so.